DA 06-0763

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 80

BRYAN LEE,

      Plaintiff and Appellant,

  v.

GREAT DIVIDE INSURANCE COMPANY,

      Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District,<br>In and For the County of Lewis and Clark, Cause No. BDV-2005-568<br>Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Mark M. Kovacich; Lewis, Slovak & Kovacich, Great Falls, Montana

      For Appellee:

          Allan H. Baris; Moore, O'Connell & Refling, P.C., Bozeman, Montana

              Submitted on Briefs: October 24, 2007

              Decided: March 11, 2008

Filed:

          _____
                    Clerk

District Court Judge John W. Larson, sitting for Justice Jim Rice, delivered the Opinion of the Court.

¶1     Bryan Lee ("Lee") appeals from a summary judgment order entered for Great Divide Insurance Company ("Great Divide") by the First Judicial District Court, Lewis and Clark County.  We consider the following issue on appeal:  Did the District Court properly grant summary judgment for Great Divide?   We affirm.

FACTS

¶2     This case arises from a July 15, 2000, automobile accident in Helena that occurred at the intersection of Euclid Avenue and Joslyn Street involving vehicles driven by Lee and Sheree Peters ("Peters").  Peters had not purchased the statutorily required automobile liability insurance coverage for her vehicle.  She received citations for that omission, failure to yield the right-of-way, driving with a suspended driver's license and driving under the influence of alcohol.

¶3     Lee was driving a Ford pickup purchased in January 2000 and insured by American States Insurance Company ("American States") effective June 9, 2000, under a corporate policy issued to his corporation, Lee's Mobile Home Service Inc.  Great Divide insured two 1994 trailers and a 1993 Ford pickup, pursuant to a separate commercial policy to "Bryan Lee DBA: Lee's Mobile Home Service Inc."  The policy period for the Great Divide coverage was effective on March 10, 2000.  A policy change endorsement amended the named insured solely to "Lee's Mobile Home Service Inc." and removed the reference to Bryan Lee as a named insured.

2

¶4 On May 15, 2002, Lee filed a suit against Peters and American States in the First Judicial District Court, Cause No. DV-2002-326. Lee did not name Great Divide as a defendant in that action. The first notice to Great Divide of the July 15, 2000, accident was by letter dated September 23, 2003.

¶5 In April of 2004, the case against American States for uninsured motorist ("UM") coverage was settled. In September 2004, Lee moved the District Court to remove any reference to American States in the Complaint while continuing his claim against Peters. American States subsequently was removed from the caption.

¶6 On September 28, 2004, Lee served Peters with his Second Amended Complaint. The Second Amended Complaint did not include any reference to the earlier complaint for UM coverage against American States, which had been settled. Lee sent a letter to Great Divide dated November 1, 2004, which stated "[p]lease take whatever action you deem necessary to protect the insurer's interests regarding this matter." Attached to this letter, Lee provided Great Divide with a copy of the Second Amended Complaint against Peters alone.

¶7 On November 16, 2004, Peters' default was entered by the District Court. Following a hearing on April 13, 2005, a $1,100,232.05 judgment was entered against Peters. Lee did not notify Great Divide of the entry of default or hearing for default judgment in that case.

¶8 On August 18, 2005, Lee filed the current action, BDV-2005-568, against Great Divide and set forth the following causes of action: Declaratory Relief; Breach of Insurance Contract; Unfair Claim Settlement Practices; and Punitive Damages. On May 24, 2006, Lee moved for partial summary judgment against Great Divide arguing that Great Divide should

3

provide its policy limits of $1,000,000 of UM coverage and $5,000 of medical benefits coverage due to the default judgment entered against Peters in the separate action. After a hearing, the District Court denied Lee's motion and granted Summary Judgment for Great Divide, concluding the Great Divide policy did not cover Lee for the accident, and Lee did not provide proper notice of his claim to Great Divide.

<u>STANDARDS</u>

¶9 The standard of review for a district court's grant of summary judgment is *de novo*. *Farmers Union Mut. Ins. Co. v. Horton*, 2003 MT 79, ¶ 10, 315 Mont. 43, ¶ 10, 67 P.3d 285, ¶ 10.

¶10 Under M. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Further, "[i]f the district court determines that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law." *Edwards v. Burke*, 2004 MT 350, ¶ 11, 324 Mont. 358, ¶ 11, 102 P.3d 1271, ¶ 11 (citations omitted).

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist.

*Mathews v. BJS Constr., Inc.*, 2003 MT 116, ¶ 12, 315 Mont. 441, ¶ 12, 68 P.3d 865, ¶ 12 (*citing Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21 (*quoting Bruner v. Yellowstone County*, 272 Mont. 261, 264-65, 900 P.2d 901, 903

4

(1995))).  "Because summary judgment is an extreme remedy which should not be a substitute for a trial on the merits if a material factual controversy exists, all reasonable inferences which can be drawn from the evidence presented should be drawn in favor of the non-moving party." *Jobe v. City of Polson,* 2004 MT 183, ¶ 10, 322 Mont. 157, ¶ 10, 94 P.3d 743, ¶ 10 (citation omitted).

> If the moving party satisfies its burden of proof, the non-moving party must provide "material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact." *Stuart v. First Sec. Bank*, 2000 MT 309, ¶ 16, 302 Mont. 431, ¶ 16, 15 P.3d 1198, ¶ 16. "[T]he non-moving party must set forth *specific facts* and cannot simply rely upon their pleadings, nor upon speculative, fanciful, or conclusory statements." *Thomas v. Hale* (1990), 246 Mont. 64, 67, 802 P.2d 1255, 1257.

*Hiebert v. Cascade County*, 2002 MT 233, ¶ 21, 311 Mont. 471, ¶ 21, 56 P.3d 848, ¶ 21. "An *absence* of evidence simply cannot—under law or common sense—establish the existence of a genuine issue of material *fact*." *Saari v. Winter Sports, Inc.*, 2003 MT 31, ¶ 17, 314 Mont. 212, ¶ 17, 64 P.3d 1038, ¶ 17.

¶11    A cross-motion for summary judgment is not required for a court to enter summary judgment in the non-moving party's favor where it is apparent that no genuine issues of material fact exist.  *Bitterroot Intern. Systems, Ltd. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 38, 336 Mont 145, ¶ 38, 153 P.3d 627, ¶ 38.

DISCUSSION

## I.  Great Divide's Corporate Coverage

¶12    Lee argues that the Great Divide corporate policy should extend coverage to him personally because of ambiguities in the policy.  Lee contends he has individual coverage

5

under this policy based upon a general reference to "you" as used in the section of "Who is an insured" under the policy's explanation of liability coverage. He argues that ambiguous references to "insured" and "you" in the Great Divide policy should be determined to expand coverage to any person affiliated with a corporation such as owners, officers, and directors of which Lee is the sole type. Lee also argues that Great Divide provides portable coverage for accidents which involve any vehicle occupied by an insured.

¶13 Great Divide responds that no such ambiguity exists and Montana case law interpreting corporate policies has not been expanded to cover individual officers, directors, shareholders or employees of a corporation unless insureds are injured while occupying a covered corporate vehicle. Great Divide notes that when Lee obtained coverage he choose to limit coverage to specifically described vehicles. Great Divide argues that a determination interpreting this policy to cover individual insureds in any vehicle is contrary to the express terms of the policy which identify it as a corporate policy for certain identified vehicles.

¶14 The determination of who is the insured under a business automobile policy issued to a corporation is the beginning point of our analysis. The District Court addressed the coverage issue by first determining to what extent Great Divide provided coverage. Under the Great Divide policy, a corporate insured can agree to insure its vehicles in one of nine ways. Of the nine separate covered vehicle options available, Lee elected to insure only "specifically described 'autos.'" The policy defined "specifically described 'autos'" as those listed autos in the covered autos section of the Commercial Auto Policy Declarations for which a premium charge is shown. Because the 2000 Ford truck involved in this accident

6

which injured Lee was not listed under the Great Divide policy nor considered a substitute vehicle per the policy, the District Court determined he was not driving a covered auto at the time of the accident. He did not elect to cover the truck under any part of the Great Divide policy; instead, he only purchased the American States policy to cover that vehicle.

¶15 The District Court relied on *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 2003 MT 174, 316 Mont. 382, 73 P.3d 800, and *Chilberg v. Rose*, 273 Mont. 414, 903 P.2d 1377 (1995), to reject expansion of coverage under the business auto policy to any person associated with a corporation who was driving a vehicle not listed on the policy and injured by an uninsured motorist. The *Chilberg* case supports limiting coverage to the reasonable expectations of insureds occupying vehicles listed in the policy at the time of the accident. *Chilberg*, 273 Mont. at 418, 903 P.2d at 1380. Similarly, in *Lierboe*, denial of coverage was upheld where an injured passenger was in a vehicle that was not identified in the corporate policy. *Lierboe*, at ¶ 23.

¶16 Here the definition of "you" throughout the policy is the named insured, the corporation. Further, the policy is identified as a corporate policy. The applicable policy provisions limit coverage to the corporation and to anyone else occupying a covered auto or temporary substitute for a covered auto. We have not expanded coverage to injured persons involved in the corporation who are not occupying vehicles covered under the policy at the time of the accident. *See Lierboe* and *Chilberg*. Accordingly, the District Court correctly determined that no coverage existed under the Great Divide policy.

**II. Removal of Lee as Named Individual Insured from Policy**

7

¶17     Lee also contends that there are disputed genuine issues of material fact regarding the policy endorsement which removed Lee as a personally-named insured in the Declarations portion of the policy. An amendment deleting that reference is disputed by Lee as being ineffective and raising factual issues requiring trial.

¶18     Great Divide argues that Lee conceded in his Reply Brief to the District Court that the amendment of the named insured was authentic and in place at the time of the accident. Great Divide also contends that Lee acknowledged the effectiveness of the policy amendment deleting the reference to him individually and that it was merely a correction of a scrivener's error.

¶19     Here, a policy amendment removed "Bryan Lee DBA" as a named insured. This amendment is consistent with the language of the policy limiting UM coverage to only those individuals occupying covered vehicles. Lee conceded the authenticity and applicability of the change in his Reply Brief Supporting Partial Summary Judgment on coverage. His arguments on appeal now seek to limit that admission, but raise no genuine issues of material fact. As such, the District Court's ruling in this regard is upheld.

**III. Lee's Notice to Great Divide**

¶20     Great Divide submits that Lee's 38-month delay in reporting its claim to Great Divide was unfair, contrary to policy requirements, and thereby, precludes coverage. Lee contends that the notice provided to Great Divide was not prejudicial and, therefore, summary judgment granted by the District Court should be reversed. Lee argues that sufficient information was provided and no prejudice occurred. We disagree.

¶21 Lee's policy expressly required him to "promptly send [Great Divide] copies of the legal papers if a 'suit' is brought." Lee never sent Great Divide a copy of the initial Complaint alleging UM coverage against American States. Lee did not provide Great Divide a copy of his Second Amended Complaint until two and one-half years after the initial Complaint. The notice of the suit did not disclose that Peters, the uninsured driver, could not be found and that default judgment of over $1,000,000 would be sought against Peters, or that Lee would pursue a suit against Great Divide. The most significant information concerning this claim and suit was omitted from Lee's notice. These omissions were a material breach of Lee's policy obligations and are independently sufficient to deny coverage to Lee.

¶22 The District Court properly determined that there were no genuine issues of material fact, and Great Divide was entitled to judgment as a matter of law.

¶23 Affirmed.

/S/ JOHN W. LARSON

_____
District Court Judge John W. Larson
sitting for Justice Jim Rice

We concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JOHN WARNER

9

Justice Patricia O. Cotter dissents.

¶24 I dissent. I would conclude the District Court erred in several critical respects, and would reverse the entry of summary judgment and remand for further proceedings.

¶25 First, it must be noted that it was Lee who moved for summary judgment against Great Divide; Great Divide did not seek summary judgment on any issue. After a hearing, the District Court not only denied Lee's motion, but granted summary judgment against Lee sua sponte on the coverage issue. Although we gloss over this fact, this procedural anomaly and the District Court's ensuing errors of policy interpretation undercut the District Court's rationale for summary judgment.

¶26 We conclude that Lee should not be heard to argue that the policy amendment limiting the UM coverage raises a question of fact concerning who was actually the named insured at the time of the accident, stating that Lee "conceded the authenticity and applicability of the change in his Reply Brief Supporting Partial Summary Judgment on coverage." ¶ 19. This is an unfair observation. As Lee points out in his Reply Brief, he made this stipulation as the party *moving* for summary judgment—i.e., he conceded that for purposes of summary judgment any question concerning designation of the named insured would be construed in favor of Great Divide *as the non-moving party.* This procedural context is important for three reasons. First, it is wholly inequitable to twist a concession made by the moving party solely for purposes of summary judgment into a binding admission against him, especially when he never saw it coming. Second, Lee had no

10

opportunity to hear, much less refute, the rationale the District Court would eventually adopt in its order of summary judgment in favor of Great Divide. Finally, Great Divide's counsel conceded at oral argument that there <u>were</u> issues of fact regarding whether Lee or the corporation was the named insured, an admission which should generally be fatal to summary judgment, especially when the controlling question is coverage. However, both the District Court and this Court ignore these factors.

¶27    This Court acknowledges that there was a policy amendment that removed Brian Lee as a named insured. See ¶ 19. As Lee pointed out, while the amendment purports to be effective as of March of 2000, the signatures on the endorsement were not entered until *after* the date of the motor vehicle accident. Moreover, Lee claims he was never advised of the policy change before the accident. As we held in *Home Ins. Co. v. Pinski Bros. Inc.*, 156 Mont. 246, 257, 479 P.2d 274, 280 (1971),

> It is axiomatic that an insurer cannot unilaterally alter the coverage afforded by an insurance policy without consideration, without consent, and without notice until after the loss occurs.

At a minimum, Lee's assertion that he received no notice of the policy alteration until after the accident, not to mention the legal and ethical questions raised by virtue of the post-accident endorsements of the policy amendment, raise genuine issues of fact which should flatly preclude an order of summary judgment, and especially one entered sua sponte.

¶28    Moreover, the District Court's entire rationale for concluding that Lee must have been riding in a "covered auto" in order to secure UM coverage under the Great Divide policy was erroneous, because the District Court relied upon the wrong exclusion in the policy. The

11

exclusion relied upon by the District Court referred back to an accident involving "a vehicle described in paragraph b." "Paragraph b" addressed accidents involving *underinsured* vehicles, and imposed the exclusion for persons not riding in covered autos. Here, however, the tortfeasor's vehicle was *uninsured*. As such, this accident was governed by "paragraph a," which contains no exclusion for persons not riding in covered autos. Thus, while Great Divide's policy excluded accidents with an underinsured motor vehicle when the insured is occupying a non-listed auto, it does not exclude accidents with an uninsured vehicle occurring while occupying a non-listed auto. Notably, Lee pointed out this crucial error in the District Court's analysis in his opening brief on appeal (by virtue of the sua sponte entry of summary judgment, this was his first opportunity to do so), and Great Divide tacitly acknowledged the error in its response brief. Moreover, this correct reading of the policy is consonant with the fact that UM coverage is mandatory, personal and portable. *Jacobson v. Implement Dealers Mut. Ins. Co.*, 196 Mont. 542, 544, 640 P.2d 908, 912 (1982); Section 33-23-201, MCA.

¶29 I also take issue with the Court's conclusion that Lee's notice to Great Divide was unfair and therefore provided an additional basis for denying coverage as a matter of law. ¶ 21. Lee's counsel submitted a claim for coverage to Great Divide in September of 2003, upon learning of the existence of the Great Divide policy. In response, Great Divide denied coverage. It denied coverage a second time late in 2004 after receiving from Lee of a copy of the complaint against the tortfeasor, and before default judgment against the tortfeasor was taken. For Great Divide to belatedly claim prejudice by virtue of late service of the

12

complaint against the uninsured driver rings hollow under these circumstances, especially in light of its own adjuster's testimony that she never performed an investigation when the claim was first presented because in her judgment, there was no coverage. At a minimum, these facts do not lend themselves to a determination that Great Divide was prejudiced as a matter of law.

¶30 In sum, I disagree with our Opinion across the board. While the questions of coverage and prejudice might have eventually been resolved correctly following a full development of the facts and exploration of the law, these questions were wrongly resolved without notice to Lee, and on the basis of an undeniably erroneous interpretation of the insurance policy by the District Court. For these reasons, I strenuously dissent.


/S/ PATRICIA COTTER


Justices James C. Nelson and W. William Leaphart join in the Dissent of Justice Patricia O. Cotter.


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART


13